RAY v. LYNES.

1. A blacksmith shop in a small village, is not in judgment of law a nuisance, so as to authorize a court of chancery to interpose by injunction, and prevent its erection. Whether a blacksmith shop might not be so inartificially and improperly constructed, as to be peculiarly liable to fire, and subject to be abated as a nuisance in a town—*Quere?*

2. One who erects a house in a city or town, on the margin of his lot, with a window opening upon the lot of the adjoining proprietor, does not thereby acquire such a right to the use of his window as to deprive the adjoining proprietor of the right to build on his lot, in any manner his judgment, or fancy may dictate.

Error to the Chancery Court at Macon.

BILL by the plaintiff in error, for an injunction against an alledged nuisance.

The bill charges, that the complainant is the owner of a lot in the town of Tuskegee, on which is a dwelling house, worth $500, which he occupies with his family. That the defendants own the adjoining lot, and have commenced the erection of a building for a blacksmith shop, as he is informed and believes, which will run back to the corner of the dwelling house, and will obstruct the light, which a window nearest the contemplated erection has been accustomed to afford to himself and his family, and thereby darken the window. That the appropriation of the house to a blacksmith shop, will endanger complainant's dwelling by fire, and from the noise, smoke, &c. be a source of perpetual annoyance to himself and his family, and disturb their comfort, &c. The prayer of the bill is for an injunction, &c., which was granted by a circuit judge.

The defendants answered the bill, but as the chancellor dismissed the bill for want of equity, they need not be considered.

The error assigned here is, the decree of the chancellor dismissing the bill.

BELSER, for plaintiff in error.
S. WILLIAMS, contra.

ORMOND, J.—The power of the court of chancery to interfere by injunction in the case of a private nuisance, from the inability of a court of law to afford adequate redress in all cases, is clearly established. It must nevertheless be admitted, that it belongs to the extraordinary powers of the court, and should be cautiously and sparingly exercised. We gave some consideration to this subject in the case of Rosser v. Randolph, 7 Porter, 245, and we then laid down the rule to be, that to authorize the interference of the court by injunction, "it must be satisfactorily established that the proposed erection would inflict an irreparable injury, such an one as could not be adequately compensated in damages; or it must threaten materially to impair the comfort of the existence of those living near it, to entitle those aggrieved to the preventive justice of the law; a clear and plain case must be made out." The first question to be settled is, whether the proposed building will necessarily be a nuisance. We do not doubt, there are many cases in which the court will intend that certain proposed erections, in the immediate vicinity of the dwellings of others, would, if erected, be nuisances. The admitted power of the court to restrain the erection of such, and in advance to prevent the threatened injury, necessarily presupposes this. But the proposed erection must necessarily, if erected, be a nuisance; such as the carrying on of a noisome, offensive trade, injurious to health, and to the comfort and enjoyment of life. However necessary these offensive trades may be, they must be carried on in such places as not to affect the health and comfort of others.

Is a blacksmith shop, in a small village, of this character? In our opinion, it is not. A blacksmith might not be as desirable a neighbor as one following a more quiet trade, but

the inconvenience arising from the sound of the hammer, or from the smoke of the forge, are not such, in our judgment, as will enable a court of chancery to pronounce it a nuisance. It may certainly, to some extent, impair the comfort of those living in the immediate vicinity, and especially of those occupying the adjoining lot; but this is not sufficient to call into exercise this power, which has been justly called transcendant. The proposed erection must be such, as in judgment of law, to threaten *materially to impair the comfort of the existence* of those living near it, to authorize the interference of a court of chancery; and we do not think this can be affirmed in advance, of a village blacksmith shop. No case has been cited, in which it has been held, that a blacksmith shop is, in estimation of law, a nuisance, though it is laid down by some of the text writers, that a smith's forge so near another's house as to injure it materially, is a nuisance. In the case of the Attorney General v. Nichol, 16 Vesey, 338, Lord Eldon asserts, that there may be cases of private nuisances, which would support an action on the case, and yet not be sufficient to authorize the court to interfere by injunction. A case must be made out, which establishes the necessity of a preventive remedy, as well as a right to compensation in damages; and in all cases where this right is doubtful, it is the duty of the court of chancery to abstain from interference, until the party has established at law his right to redress for the nuisance complained of; and that it belongs to that class of troublesome, mischievous cases, which can only be adequately redressed by an injunction. [See also Van Bergen v. Van Bergen, 3 Johns. Ch. 882, and Earl of Ripon v. Hobart, 1 Coop. S. C. 333.]

There is nothing in the argument that there was room elsewhere on the lot to build the shop, without putting it in the immediate vicinity of the plaintiff's house. If it is a nuisance it is unimportant on what part of the lot it is erected. If it is a justifiable erection, the plaintiff has no right to dictate where it shall be placed. As to the objection of the danger of fire, from the sparks of the forge, it is an evil if it exists, incident to the contiguity of houses in towns and cities. Every one who builds on the margin of his lot, in a

city or town, does so with a knowledge that the adjoining proprietor has the same right, and that he is exposed to danger from fire communicated by his neighbor. It is possible that a smith's shop might be so inartificially, or carelessly constructed, as to be peculiarly liable to take fire, and thus unnecessarily to endanger the surrounding buildings, but we cannot assume that this will be of that character, but must suppose that it will be constructed with a due regard to the safety, and the rights of others.

The privation of light by the erection of the smith's shop, is not sufficiently shown by the bill, to authorize the court to interfere. Although it is not necessary that there should be a total privation of the light previously admitted through a window, to authorize the interposition of chancery, it is not sufficient that the light will be to some extent obstructed by the proposed building. It must be a material privation of the privilege before enjoyed. In this case it appears that the proposed building will stand at a right angle with the plaintiff's house, and although it may to some extent impair the free circulation of air, and the passage of light, as previously enjoyed, it can scarcely be affirmed that it amounts to such a material privation as would justify the interference of a court of chancery. [See the case of the Atto. Gen. v. Nichol, 16 Vesey, 338.]

The foundation of this right is the privation of an ancient privilege, so long enjoyed as to become a right. Such is not the fact here. We must infer from the bill that the plaintiff's building is a recent erection, and certainly one who erects a house in a city or town, on the margin of his lot, with a window opening upon the lot of the adjoining proprietor, does not thereby acquire such a right to the use of his window, as to deprive the adjoining proprietor of the right to build on his lot, in any manner his judgment, or fancy may dictate. Such a right could only be presumed from long acquiesence in its enjoyment, which would thereby ripen into a title, and presupposes a grant. No such presumption exists in this case, and it was the folly of the plaintiff so to construct his house as to be dependent on the adjoining proprietor, for light and air. It can furnish no ground for an inter-

ference with the acknowledged rights of the adjoining proprietor. [Gevin v. Melmoth, Freeman's C. 505.]

Let the decree be affirmed.