Gulf House Association, Inc.,[1] appealed to this Court from the trial court's denial of both preliminary and permanent injunctive relief against the construction of "The Whaler" condominium apartments in Gulf *Page 1062 
Shores. Petitioners also appealed to the Circuit Court of Baldwin County from the issuance of a variance granted by the Board of Adjustment of the Town of Gulf Shores, and, following trial in that court, appealed to the Court of Civil Appeals from a ruling in favor of issuance of the variance. These two appeals were consolidated for this Court's consideration. We affirm.
In 1983 Forrest Waters, Jr., purchased lots 3, 4, 5, and 6 of the Romeo Skipper subdivision in the Town of Gulf Shores. These lots are in a commercial district zoned BTL:
 "BTL Tourist Lodging District. This district is intended to provide suitable locations for housing serving the needs of tourists or residents who wish to reside in the resort area and for related commercial activities that are compatible with the resort residential character of the district."
 Gulf Shores, Alabama, Zoning Ordinance § 6-3-A (May 10, 1982, as amended March 12, 1984).
The Waters lots, each measuring approximately 50 feet by 140 feet, were created by subdivision at a time when use of the area in question was primarily residential. Lots 5 and 6 face the beach; lots 3 and 4 are directly behind, or north of them. The north lots and south lots are separated by a right-of-way in the form of a narrow alleyway. Immediately to the east of the Waters property is the Gulf House, a six-floor 36-unit condominium stretching from the beach back almost to Highway 182, the beach highway (East Gulf Shores Boulevard). The alleyway dead ends into this property. These lots are depicted in the drawing attached hereto as Appendix A.
In August of 1983, Waters applied for a variance to allow the unitization of all the lots as one piece of property for purposes of zoning in order to enable him to construct a condominium. At the Board of Adjustment hearing on this matter, counsel for Gulf House appeared and objected to issuance of the variance. Waters withdrew this variance request, stating that he would return to a later meeting with a request specifying the precise areas where a variance would be required. On September 8, 1983, Waters applied for four variances, described as follows:
 (1) A variance from the setback requirement from the northern lot line of lots 5 and 6 so that he could build within two feet of the lot line.
 (2) A variance of two feet from the northern lot line of lots 5 and 6, which would allow building up to that point and give relief from the shadow effect.
 (3) A variance on the setback requirement on lot 6 which would allow building up to ten feet from the western lot line of lot 6.
 (4) A request to allow unitization of the four lots as one for area and dimension requirements for building purposes.
At the September 1983 meeting of the Board of Adjustment it was noted by the Board that lot unitization had never before, to the knowledge of the members present, been presented to the Board for a variance, although a number of lots within the town had been unitized. The Board then passed a motion stating if lots 3, 4, 5, and 6 were unitized into one lot, then requested variances one and two were approved based on the plans submitted.
In October of 1983 Waters again requested a variance from area and dimension requirements in order to utilize lots 5 and 6 for a building and lots 3 and 4 for parking. The board reminded Waters that it had approved the variances regarding the north lot line and the shadow effect contingent on Water's unitizing the lots by declaration of unitization. Waters withdrew that request and thereafter executed a "Covenant of Unity of Title," which was filed in the county probate office. This document stated that the four lots were considered to be one piece of property for purposes of building. On April 30, 1984, the Town of Gulf Shores issued the building permit for the construction of the condominium. On March 12, 1984, the Town Council approved by resolution the site plan for the condominium, to be known as "The Whaler." *Page 1063 
On May 2, 1984, Gulf House filed a "Motion for Preliminary Injunction," and on July 5, 1984, a "Complaint for Permanent Injunction," seeking to enjoin construction of The Whaler and to enjoin enforcement of the provisions of §§ 8-13-A and 8-13-B of Ordinance Number 284 of the Town of Gulf Shores, alleging those sections to be unconstitutional.[2]
Hearings were held before the Circuit Court of Baldwin County on May 7, June 19, and August 21, 1984. Both preliminary and permanent injunctive relief were denied by the trial court, but in the course of the proceedings the court, on its own motion, concluded that Waters should obtain an additional variance which would allow him to build in accordance with his plans, to a point on his south property line on lots 5 and 6.
Under the Town's zoning ordinance an owner may build to what is called the construction setback line on lots abutting the Gulf. Section 8-2, Zoning Ordinance of May 10, 1982. For multi-family or commercial properties, the construction setback line is a line running generally parallel to the shoreline at points 5 feet inland of the primary dune crest line. Section 8-11, Zoning Ordinance, supra. On other commercial lots, not abutting the Gulf, structures must be set back 20 feet from the property line and inland of the construction setback line. Sections 7-1 and 8-11, Zoning Ordinance, supra.
The Waters lots abut a private beach in which Waters owns an undivided interest. His property line is inland of the construction setback line at the point in question. For these reasons the Town considered his lots to be Gulf side lots and did not construe the ordinance as requiring a 20-foot south setback. Nevertheless, in response to the trial court's direction, Waters applied for and received on June 6, 1984, a variance to build to this south lot line. At this point, foundation pilings had been put in, the basic foundation had been poured, and approximately $600,000 had been expended for construction. It is from the issuance of the variance on the south setback line, as well as the denial of injunctive relief, that Gulf House appeals.
We will first decide whether the ruling in favor of issuance of the variance was proper. Any party aggrieved by any final judgment or decision of a Board of Zoning Adjustment may within 15 days thereafter appeal therefrom to the circuit court by filing with the Board a written notice of appeal. Ala. Code 1975, § 11-52-81. In Crowder v. Zoning Board of Adjustment,406 So.2d 917, 918 (Ala.Civ.App. 1981), the court held that "in order for a party to appeal from a decision of a zoning board he must be a `party aggrieved' by establishing proof of the adverse effect the changed status of the rezoned property has, or could have on the use, enjoyment, and value of his own property."
The evidence in this case is insufficient to show that Gulf House was "aggrieved." The record contains only an attempt to interject evidence of the effect of The Whaler on the view from the Gulf House condominiums. This attempt is shown by the following exchange.
"Q. (by Mr. Wilkins, counsel for appellant):
 "What do you feel like the construction of that Whaler would have on the Gulf House?
"MR. ROWE: (counsel for the Board of Adjustment):
 "I object to the form of the question and the lack of adequate predicate.
"THE COURT: Sustained."
No other offer of proof as to damages was made by Gulf House. The residents of Gulf House have no legal entitlement to a *Page 1064 
view across the Waters property. In Ray v. Lynes, 10 Ala. 63
(1846), the court said:
 "[O]ne who erects a house in a city or town, on the margin of his lot, with a window opening upon the lot of the adjoining proprietor, does not thereby acquire such a right to the use of his window, as to deprive the adjoining proprietor of the right to build on his lot, in any manner his judgment, or fancy may dictate. . . . [I]t was the folly of the plaintiff so to construct his house as to be dependent on the adjoining proprietor, for light and air."
Thus, the residents at Gulf House have failed to show any legally cognizable adverse effect on the use, enjoyment, and value of their property. Accordingly, the ruling granted in favor of issuance of the variance was proper. Whether or not the trial court erred in denying the preliminary injunction is moot, because there has been a final decision on the merits which denied the permanent injunction. See Kellum v. Williams,252 Ala. 71, 39 So.2d 573 (1949). Therefore, the only issue left to decide is whether the trial court abused its discretion in denying permanent injunctive relief. The decision to grant or deny injunctive relief rests in the sound discretion of the trial court and will not be set aside unless an abuse of that discretion is shown. Acker v. Protective Life Insurance Co.,353 So.2d 1150 (Ala. 1977). A permanent injunction will be granted when there exists a clear, specific, legal right requiring protection and the injunction is necessary to prevent irreparable injury and there is no adequate remedy at law.Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17
(Ala. 1983); State ex rel. Abernathy v. City of Sheffield,428 So.2d 5 (Ala. 1982); First National Bank of Oxford v. Whitmore,339 So.2d 1010 (Ala. 1976); Nininger v. Norwood, 72 Ala. 277
(1882).
The record in this case supports the denial of permanent injunctive relief, because Gulf House has failed to show the existence of a legal right which requires protection. The only thing for which protection is sought is a view of the Gulf of Mexico, to which Gulf House does not have a legal entitlement.Ray v. Lynes, supra.
Correspondingly, there can be no irreparable injury to Gulf House. In addition, there was no evidence to establish that Gulf House had no inadequate remedy at law.
Gulf House also asserts that Sections 8-13-A and -B of Gulf Shores Ordinance Number 284, amending Article 8 of Ordinance Number 235, are unconstitutional. The record establishes that the amendment of the Zoning Ordinance and the Town Council's approval of plans for the construction of The Whaler were separate, independent events. Waters was told by the Board in September of 1983 that he needed to unitize the lots in order to get a variance. He did this by filing a "Covenant of Unity of Title" in the county probate office. The Town Council did not approve the amendment of the Zoning Ordinance until March 12, 1984. This was also the date on which the Council approved the site plans and specifications for The Whaler. However, there does not appear to be any connection between the two acts by the Council.
Since there is no evidence to show that the approval of the construction was dependent upon the amendment, consideration of the constitutionality of that amendment provision is not essential for disposition of this case. See Primm v. City ofBirmingham, 42 Ala. App. 657, 177 So.2d 326 (1964); Bray v.State, 140 Ala. 172, 37 So. 250 (1904); Smith v. Speed, 50 Ala. 276
(1873). In Smith v. Speed, supra, the court also stated:
 "[I]f the record also presents some other clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, the court will take that course, and leave the question of constitutional power to be passed upon when a case arises which cannot be otherwise disposed of."
Due to the fact that we have found no connection between the amendment and the approval of construction and have found *Page 1065 
that denial of injunctive relief was proper, we decline to pass upon the constitutionality of the amendment.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
ADAMS, J., not sitting.
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]
[1] Gulf House Association, Inc., is an incorporated group of people who own and occupy the Gulf House condominium apartments.
[2] The Zoning Ordinance of May 10, 1982, of the Town of Gulf Shores was amended on March 12, 1984, by Ordinance Number 284, which added Sections 8-13-A and -B. Sections 8-13-A and -B provide that when it is necessary that two or more pieces of property be joined to meet area or dimension requirements, the building permit application shall be accompanied by evidence of the recording of a unity of title declaration and that land so joined shall remain indivisible.