Eugene Douglas Reid II sued Jefferson County and the City of Birmingham, relying on § 235 of the Constitution of Alabama of 1901 and seeking damages for the alleged inverse condemnation of certain property. Reid, whose property fronts U.S. Highway 78, contends that the defendants' building of a pedestrian bridge across Highway 78 in Birmingham caused "injury" to his property and that, therefore, the defendants are liable under § 235. The trial court entered a summary judgment for the defendants. Reid appeals. We affirm.
Reid's property is adjacent to the right-of-way of Highway 78 where the pedestrian bridge was constructed. He does not claim that any portion of the bridge was constructed on his property, nor does he claim that any damage resulted from the actual construction of the bridge. He does contend, however, that the pedestrian bridge substantially hampers the exposure of his property and the business sign located on his property *Page 1286 
to persons traveling on Highway 78. He further contends that the pedestrians using the bridge also use his access drive and that in doing so they interfere with ingress to and egress from his property.
As evidence of damages, Reid claims that the value of his property before the construction of the bridge was $485,000. That value, he claims, was diminished to $245,000 after the construction of the bridge.
Section 235 states, in pertinent part:
 "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. . . . ."
The issue in this case is whether Reid offered substantial evidence that he suffered harm or loss as a result of the construction of the pedestrian bridge and, if so, whether that harm or loss is one contemplated by § 235.
Reid stated in his affidavit, offered in opposition to the motion for summary judgment:
 "Your Affiant is the owner of the real property . . . located at 1556 Bankhead Highway (U.S. Highway 78 West), Birmingham, Alabama 35214. Your Affiant's property . . . has for a long period of time been zoned by the City of Birmingham for commercial use. Over the years your Affiant's property has been used . . . for the sale of used automobiles. The property . . . is located adjacent and contiguous to the Bankhead Highway. Exposure to U.S. Highway 78 is vital to the operation of a used car sales business. Also, ingress and egress [are] essential to the operation of a used car sales business, as well as any type of commercial activity.
 "Defendants, Jefferson County and The City of Birmingham, did on or about November 15, 1992, commence the construction of an overhead walk bridge over and across U.S. Highway 78 at G.W. Scott School. This walk bridge is adjacent and contiguous to your Affiant's property. The overhead bridge has now been completed and substantially reduces the exposure of your Affiant's property to persons traveling in motor vehicles on and over U.S. Highway 78. The overhead bridge also substantially interferes with the ingress [to] and egress [from] to your Affiant's property to and from U.S. Highway 78. Your Affiant's property has been diminished in value by virtue of the overhead bridge. The overhead walk bridge has resulted in a direct physical disturbance of a right, either public or private, which your Affiant enjoys in connection with the said property, and which diminishes the value of your Affiant's property by virtue of such disturbance. Your Affiant has sustained and is sustaining special damage in excess of that sustained by the general public.
 "The overhead walk bridge is unsightly and diminishes the desirability of your Affiant's property for business or commercial establishments. The overhead walk bridge has impaired ingress and egress [from and to] U.S. Highway 78. Also, the overhead walk bridge has resulted in pedestrian traffic entering your Affiant's access drive from the walk bridge, thereby interfering with ingress and egress [from and to] U.S. Highway 78. . . .
". . . .
 "The construction, erection, completion and maintenance of the overhead walk bridge resulted in injury to your Affiant's property and in the pecuniary value of your Affiant's property being diminished in that:
 "1. Its exposure to U.S. Highway 78 has been impaired;
 "2. Its ingress and egress [from and to] U.S. Highway 78 have been impaired;
 "3. No other property owner along U.S. Highway 78 West has sustained special damage resulting from the overhead walk bridge; and
 "4. Your Affiant's property had a fair market value of $485,000.00 prior to the construction, erection and completion of the overhead walk bridge and its fair *Page 1287 
market value after completion of the overhead walk bridge is $245,000,00."
C.R. at 82.
In Gulf House Ass'n, Inc. v. Town of Gulf Shores,484 So.2d 1061 (Ala. 1985), Gulf House Association, Inc., the owner of a condominium complex, contended that the owner of four adjoining lots should not have been granted certain variances that would allow him to construct a condominium complex on his property. The proposed condominium complex would block the view of the owners of existing condominiums. With regard to the denial of the temporary and permanent injunctions requested by Gulf House, this Court stated:
 "The evidence in this case is insufficient to show that Gulf House was 'aggrieved.' The record contains only an attempt to interject evidence of the effect of The Whaler [the newly built condominiums] on the view from the Gulf House condominiums. . . . No other offer of proof as to damages was made by Gulf House. The residents of Gulf House have no legal entitlement to a view across the Waters property. In Ray v. Lynes, 10 Ala. 63 (1846), the court said:
 " '[O]ne who erects a house in a city or town, on the margin of his lot, with a window opening upon the lot of the adjoining proprietor, does not thereby acquire such a right to the use of his window, as to deprive the adjoining proprietor of the right to build on his lot, in any manner his judgment, or fancy may dictate. . . . [I]t was the folly of the plaintiff so to construct his house as to be dependent on the adjoining proprietor, for light and air.'
 "Thus, the residents at Gulf House have failed to show any legally cognizable adverse effect on the use, enjoyment, and value of their property. Accordingly, the ruling granted in favor of issuance of the variance was proper."
484 So.2d at 1063-64. It is implicit in the Gulf House opinion that the obstruction of the view from the Gulf House condominiums would result in their becoming less desirable to future purchasers, i.e., that it would result in a decrease in market value.
The defendants contend that Crofford v. Atlanta, B. A R.R.,158 Ala. 288, 48 So. 366 (1908), is controlling. In Crofford, this Court stated:
 "It is admitted by the bill that the viaduct being constructed over Berkley avenue was authorized by ordinance of the municipality, and it is not denied that the same is being constructed in conformity with said ordinance. The structure, therefore, being one authorized by law, cannot be said to constitute a public nuisance. The bill shows that the viaduct arches said avenue overhead 30 feet, and that there is a passageway for public travel, left in the middle of the avenue under said arch, 30 feet wide. It is evident, from this, that the right of access of abutting property owners on said avenue to and from their property, is not, by reason of the viaduct, denied them. Moreover, we are of the opinion that the way so left open for public travel is reasonable and convenient.
 "This brings us to a consideration of the principal question in this case, and one not specially treated of in the Case of Hall [v. Atlanta, B. A. R.R., 158 Ala. 271, 48 So. 365
(1908)], and that is the one wherein it is charged in the bill: 'And complainants further aver that the construction of said embankment and archway and railroad [as] aforesaid, upon which is to be operated the aforesaid railroad, will greatly obstruct complainants' access to view, light, and air, and would greatly cut off the circulation of air, and would place in said highway an obstruction that would be unsightly to the eye. * * * And complainants further aver that said fill across said alley will also wholly cut off and obstruct their access to the view, light, and air over the same from toward Fourteenth street and the south, to which they are entitled.' The bill shows that the complainants are the owners of lots 1, 2, 3, 4 and 5, each of said complainants owning separately and respectively one of said lots, and that the respondent the Alabama Terminal Railroad Company is the owner of lots 6, 7, and 8. All of said lots are in the same block, and front on Berkley avenue, and extend back to the alley in question, and all of said lots are of *Page 1288 
a uniform width of 50 feet. . . . The lot of the complainant Crofford is the nearest one of the abutting owners to the point where the viaduct crosses the avenue and to the point where the fill crosses the alley; the distance being not less than 50 feet. The lots of the other complainants abutting on said avenue are still further away, from 100 to 250 feet.
 "So far as the embankment, which is constructed on the respondent's own private property, affects the complainants' easement of view, light and air, this is a proposition that contains no merit whatever. No one can doubt the right of a party to build on his own land, even though it entirely cuts off the view, light, and air of his neighbor on the side next to such building. As against an adjacent landowner the doctrine of an easement in light, air and view, is not recognized in this state, even though such right or title be based upon a claim by prescription. — Ward v. Neal, 37 Ala. 500, which case was followed in Jesse French Co. v. Forbes, 129 Ala. 471, 29 So. 683, 87 Am.St.Rep. 71. As to the viaduct over the avenue and the fill in the alley, under the facts stated in the bill as to the distances from complainants' property and the character of the structure, it is difficult to conceive how the complainants can be affected as to air and light. The right of the respondents to cross the avenue with their railroad is not denied; nor is it denied that the manner of the crossing, viz., by the overhead viaduct, is the safest for the public using said avenue, and the only feasible way of crossing. We are of the opinion that on the facts of this case there is no such taking, destroying, or injuring of the complainants' property, within the meaning of section 235 of the Constitution of 1901, as would authorize interference by a court of chancery in the exercise of its restraining powers."
Crofford, 158 Ala. at 293-95, 48 So. at 367-68. The defendants contend that, based on the authority of Crofford, this Court should affirm the summary judgment.
In opposition to the motion for summary judgment, Reid argued that there is an easement for view over a public highway and that he had submitted substantial evidence of "injury" or harm to his property and therefore was entitled to submit his inverse condemnation claim to the jury.
In First National Bank of Montgomery v. Tyson, 144 Ala. 457,39 So. 560 (Ala. 1905), the plaintiff, A.P. Tyson, sued First National Bank of Montgomery, the owner of a lot adjacent to a lot owned by Tyson, contending that certain proposed construction would result in injury to him as a property owner. The Court stated:
 "The bank proposed to erect on its lot a six-story building of brick and stone, with four stone columns in front of the building which would project onto the sidewalk from 22 to 26 inches from the building line of the street. Tyson filed the bill in this case to enjoin the bank from erecting the columns, upon the ground that the same, if erected, would be a public nuisance, which would result in special injury to him as an adjacent property owner, in a way different from the injury that would result from the nuisance to the public. A temporary injunction was granted. . . .
 "The averments of the bill with respect [to] the injury to the [plaintiff are] as follows: 'That said encroachment upon said highway is a public nuisance, not only infringing on the rights of the commonwealth of Alabama, but, if same are completed and placed in position as now contemplated by the First National Bank, said encroachment will greatly damage your orator beyond that which is common to the public generally, by injuring and depreciating the value of your orator's property, and by destroying the symmetry of your orator's building along the highway, which is valuable, and by obstructing the light, air, and view necessarily ensuing therefrom, and by depreciating the value of your orator's property, in that the view of persons going south along said highway north of your orator's building, will be shut off from your orator's building. Your orator further avers that the tenants now in said building are valuable tenants, and your orator is desirous of keeping them as tenants, but some of them have informed the orator that if said stone columns encroach *Page 1289 
on said highway, or any part of said building of said . . . First National Bank encroaches on said highway, they will no longer remain tenants of your orator.' Upon the return of the case to the city court much evidence was taken on both sides, and on the final hearing of the cause on the pleadings and proof the chancellor, on the 4th day of January, 1904, rendered a decree perpetually enjoining the defendant from erecting the stone columns in front of its building. From the decree the defendant has appealed.
". . . .
 ". . . On the former appeal, as on this one, the appellant denied the complainant's right to view, except to that part of the street immediately in front of his property. This contention is bottomed upon the theory that as an abutting owner defendant held the fee to the middle of the street out from his lot. Notwithstanding the ultimate fee may be vested in the bank in its lot to the center of the street, it is subject to the public easement, and this confers on the complainant, as owner of abutting, adjacent property, the right to prevent or redress an obstruction or perversion of the street to the private uses of the defendant inconsistent with the rights of the public, where special injury would result to him. — Evans v. S. . W. Ry. Co., 90 Ala. [54] on page 58, 7 South. [758] at page 759. The contention might be, and doubtless would be, tenable as between adjacent property owners of private property, where the view insisted on was across private property; but it is entirely inconsistent with the fundamental idea of a street, that it is not only public, but public in all its parts, not only for the movement of men and things on it, but the easement of light, air, and view. — Dillon on Municipal Corp. (2nd Ed.) § 541. The cases cited by appellant's counsel relate to private property. But, as touching this question, it is deemed unnecessary to reopen the discussion. We held on the former appeal, in substance, 'that an easement of view from every part of a public street, like the easement of light and air, is a valuable right of which the owner of a building on the street, should not be deprived by an encroachment on the highway by an adjacent proprietor; that the right of view or prospect is one implied, like other rights, from the dedication of the street to public use.' And, repeating here a part of the opinion of the chancellor: 'It seems to be a valuable right appurtenant to the ownership of land abutting on the highway, and to stand upon the same footing, as to reason, with the easement of motion, light and air, and to be inferior to them only in point of convenience or necessity, and that the interference with it is inconsistent with the public right acquired by dedication.' — First Nat. Bank v. Tyson, supra."
144 Ala. at 464-67, 39 So. at 560-61. In an A.L.R. annotation entitled "Interference with view as matter for consideration in eminent domain," the author quoted both Crofford and Tyson:
 "In Crofford v. Atlanta, B. A.R. Co. (1908) 158 Ala. 288, 48 So. 366, the opinion was expressed that there was no such taking, destroying, or injuring of abutting owners' property, within the meaning of a constitutional provision, as would authorize interference with a railroad's construction of a viaduct, and the court said: 'No one can doubt the right of a party to build on his own land, even though it entirely cuts off the view, light, and air of his neighbor on the side next to such building. As against an adjacent landowner the doctrine of an easement in light, air, and view is not recognized in this state, even though such right or title be based upon a claim by prescription.' (However, in First Nat. Bank v. Tyson (1901) 133 Ala. 459, 32 So. 144, 59 LRA 399, 91 Am.St.Rep. 46, which was adhered to on later appeal in (1905) 144 Ala. 457, 39 So. 560, it was held that an easement of view from every part of a public street into a building on the street, affording the opportunity of attracting customers by a display of goods, was a valuable right, and even one implied in the dedication of the street, of which the owner could not be deprived by an encroachment on the street by an adjoining proprietor, and that an injunction would lie to prevent such encroachment.)" *Page 1290 
Annot., Interference with view as matter for consideration ineminent domain, 127 A.L.R. 106 (1940).
In Tyson, a private landowner sought redress for an adjacentlandowner's blocking of his view to a public right-of-way.Tyson, therefore, stands for the proposition that one landowner has a right to stop another landowner from using a public right-of-way in a manner that is "inconsistent with the rights of the public." Tyson, 144 Ala. at 467, 39 So. at 561. Tyson,does not stand for the proposition that a municipality may not use its own property in a manner consistent with its ownership interest and in the interest of the public. The present case is more akin to Crofford. In this case, the city is using its own property in a manner consistent with its ownership interest. That use does not constitute an "injury" to Reid's property within the meaning of § 235.
Finally, the defendants offered the affidavit of Jerry Drake, a county engineer, which stated, in pertinent part:
 "No work was performed upon Mr. Reid's property. The surface of Mr. Reid's property was not disturbed. Mr. Reid's property has not been subjected to any direct or indirect physical disturbance."
Reid, in opposition to the defendants' properly supported motion for summary judgment, had the burden of showing that a genuine issue of material fact existed. Although Reid stated in his affidavit that the pedestrian bridge hampers ingress to and egress from his property, those statements are conclusory. Thus, those statements do not constitute substantial evidence and, therefore, do not warrant submitting Reid's claim to the jury. See Riggs v. Bell, 564 So.2d 882, 884 (Ala. 1990).
For the foregoing reasons, the summary judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, and COOK, JJ., concur.