Eddie Kelly, Sr., Lenora White, Willie Kelly, Sr., Inez Tellis, Dollie Safford, Hattie Kelly, David Hunter, Jr., Pauline Hunter, Jean Rush Grant, and Johnny Hunter, respectively, own, through inheritance, various parcels of land in Lowndes County, originally owned by Mathew Kelly, John Hunter, and Eugene Coleman. Eddie Kelly, Sr., and the other property owners are the defendants in the declaratory-judgment action from which this appeal lies; for ease of reference, we will refer to the aggregate of the lands they separately own as "the KHC property," and to them as "the KHC property owners." Panther Creek Plantation, LLC, Donald Wayne Simmons, and Laura Holman, the plaintiffs below, own a tract of land referred to by the parties and in this opinion as "the Carswell estate." We will refer to the three appellees as "the Carswell estate owners."
The Carswell estate owners filed an action against the KHC property owners in the Lowndes Circuit Court seeking a judgment declaring "that they are the owners of a legally enforceable right of ingress and egress on and across [the KHC property]" in the form of an existing access road which the Carswell estate owners and their predecessors in title have been using to reach a public road for more than 60 years. After the KHC property owners answered the complaint denying its essential averments, the Carswell estate owners filed a motion for a summary judgment. They supported their motion with copies of various deeds from the respective chains of title; a current survey depicting the route of the existing access road from the Carswell estate to the public road across the KHC property; a copy of a map from the Lowndes County tax assessor's office depicting the layout of the various parcels *Page 1051 
constituting the KHC property, the public road, the access road, and that portion of the Carswell estate joining the KHC property; and the affidavits of Laura Holman and her uncle, Hoffman Rhyne.
The motion asserted that when B.C. Rhyne, the common grantor of the Carswell estate to the Carswell estate owners' respective predecessors in title, purchased the first portion of the Carswell estate in 1939 from Realty Associates of Alabama ("RAA"), the land had no access to a public road. In order to reach a public road, Rhyne had to travel by an existing roadway across a portion of the land retained by RAA, which is now the KHC property. Rhyne immediately began to do so. In 1941, Rhyne purchased from RAA the additional land now a part of the Carswell estate. It also lacked any access to a public road other than by way of the access road Rhyne had established across the property retained by RAA. The motion further asserted that in 1942 Mathew Kelly, Eugene Coleman, and John Hunter purchased their parcels from RAA, at which time Rhyne was using the existing access road across their property. Rhyne continued to use that access road for more than 60 years.
The KHC property owners filed a response to the motion for a summary judgment, supported by the affidavit of one of the defendants, Eddie Kelly, Sr., a son of Mathew Kelly, an original owner of the KHC property. Much of the focus of that response and the Kelly affidavit was misdirected, as it turned out, because the KHC property owners aimed their rebuttal at what they understood to be an asserted "prescriptive easement." Focusing on the elements of that type of easement, they sought to establish that the use of the access road by Rhyne and his successors in title subsequent to 1942 had been with the permission of the Kelly family, rather than adverse to them under a claim of right, and that the use had not been exclusive, continuous, and uninterrupted, but instead had been sporadic and sometimes infrequent. Of great pertinence to our analysis, the sixth paragraph of the Kelly affidavit stated:
 "In addition, the [Carswell estate] is not `land locked.' The property is only `locked' by other property which is or was owned by either Mr. Rhyne or his siblings. Another roadway can be developed directly from the property to a public road without using the road through [the KHC property]."
A hearing was conducted on the Carswell estate owners' summary-judgment motion on December 8, 2004. The record does not reflect what transpired at that hearing, but on February 9, 2005, the trial judge issued an order granting the motion, stating that the evidence established that B.C. Rhyne had "obtained an easement by necessity across the lands of the [KHC property owners] prior to the time that the [KHC property owners] acquired title to their lands." The court concluded that the fact that thereafter the use of the access road might have been with permission and sporadic was immaterial. The KHC property owners moved the court to alter, amend, or vacate its order, and the court conducted a hearing on that motion. On May 4, 2005, the court entered an order denying the motion to alter, amend, or vacate, noting that at the hearing it had conducted on the motion, the KHC property owners had argued that the evidence "did not prove or support the existence of an easement of necessity." The court undertook to explain at length its reasoning for entering the summary judgment for the Carswell estate owners and denying the motion to alter, amend, or vacate, as follows: *Page 1052 
 "Easements may be acquired `(1) by express conveyance, (2) by reservation or exception, (3) by implication, (4) by necessity, (5) by prescription, (6) by contract, and (7) by reference by boundaries or maps.' Helms v. Tullis, 398 So.2d 253, 255 (Ala. 1981).
 "In Hamby v. Stepleton, 221 Ala. 536, 130 So. 76
[(1930)] . . ., the Alabama supreme court held as follows regarding easement of necessity:
 "`It is a universally established rule that where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands or by his and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway. The basis of this right is the presumption of a grant arising from the circumstances of the case. Necessity does not of itself create a right of way, but it is evidence of the grantor's intention to convey one, and raises an implication of a grant. The presumption, however, is one of fact, and whether or not the grant is to be implied in a given case depends upon the terms of the deed and the facts in that case. Following the general rule above stated, a similar right may be created by implied reservation, notwithstanding general covenants in a warranty deed. The underlying principle is that whenever one conveys property, he also conveys whatever is necessary to its beneficial use, coupled with the further consideration that it is for the public good that land should not be unoccupied. The rule differs from the general doctrine of implied easements in that it does not have reference necessarily to existing servitudes or quasi easements, and therefore it is unnecessary to consider in connection therewith the question of apparent or nonapparent, continuous or noncontinuous servitudes. Since the right of way is founded on a grant, it can arise only between grantor and grantee.'
 ". . . .
 "The Kelly affidavit corroborates the affidavits of Hoffman Rhyne and Laura Holman on the issue of whether the plaintiffs' property touches a public road or not — it does not. In addition, the Kelly affidavit confirms that the [Carswell estate owners] would have to travel across lands belonging to other land owners in order to reach the public road, if the [KHC property owners] refused ingress and egress to the [Carswell estate owners] over the existing access road they and their predecessors in title have been using since 1939. While the first sentence contains Mr. Kelly's conclusion that the [Carswell estate] is not `land locked,' he contradicts himself in the second and third sentences of that same paragraph when he states that the [Carswell estate owners] would have to cross lands owned by others in order to reach the public road, if they did not use the current access road. In summary, Kelly's affidavit does not create a dispute of any material fact concerning the creation of an easement by necessity in 1939 when RAA sold its first parcel of land to Mr. B.C. Rhyne, while retaining ownership of other lands separating Mr. Rhyne's land from the public road.
 ". . . .
 "In this case the following material facts were undisputed: (1) There was unity of ownership of the lands in question by RAA in 1939; (2) Mr. B.C. Rhyne (`Rhyne') purchased land from RAA in 1939 that did not have public road access; (3) Rhyne began traveling across a portion of RAA's other lands *Page 1053 
that lay between Rhyne's land and the public road in 1939; (4) Rhyne and his successors in title have continuously used the same road to access this property since 1939; and (5) the [KHC property owners'] predecessors in title purchased their lands from RAA in 1942.
 "Applying the law to these undisputed facts, makes it clear that RAA, as grantor, intended to convey to Rhyne, as grantee, a way of necessity across the premises of RAA to the highway. In order for Rhyne to make beneficial use of his property, he had to have to to [sic] get to his property from the public road. The easement by necessity provides Rhyne and his successors in interest with the necessary access from the public road to the subject premises."
On appeal the KHC property owners have not filed a brief in reply to the appellees' brief filed by the Carswell estate owners.
One argument the KHC property owners make in their initial brief is that the trial court erred in concluding that it was undisputed that the Carswell estate owners did not have access to a public road "because there was no other evidence, except uncertified or unauthenticated maps presented by [the Carswell estate owners] that demonstrated the location of the maps [sic]." (KHC property owners' brief, p. 21.) Therefore, the KHC property owners argue, the maps should be excluded from consideration and the remaining evidence is insufficient to show without dispute that the Carswell estate owners do not have access to a public road. As the Carswell estate owners point out in their brief, however, the KHC property owners never objected to, moved to strike, or otherwise challenged the admissibility of the "maps" before the trial court and, therefore, they waived any issue of the admissibility of the maps.
It is an established principle of appellate procedure in this State that the trial court can consider otherwise inadmissible evidence submitted in support of, or in opposition to, a motion for a summary judgment if the party against whom the evidence is offered does not object to the evidence by moving to strike it.Ex parte Elba Gen. Hosp. Nursing Home, Inc., 828 So.2d 308
(Ala. 2001); and Ex parte Diversey Corp., 742 So.2d 1250 (Ala. 1999). The only exception to that rule recognized by this Court is that inadmissible evidence cannot be considered if to consider it would cause a "gross miscarriage of justice." Ex parte ElbaGen. Hosp. Nursing Home, Inc., 828 So.2d at 313-14; and Exparte Diversey Corp., 742 So.2d at 1253-54. The KHC property owners have not argued that the trial court's consideration of the "uncertified or unauthenticated" maps caused a gross miscarriage of justice, and we do not independently perceive such a result. Accordingly, any problem with the admissibility of the maps was waived at the trial court level and, thus, was not preserved for review on appeal.
In otherwise arguing that the Carswell estate owners failed to prove the creation of an easement by necessity, the KHC property owners rely on the proposition that a person is not entitled to an easement by necessity if he has an alternative means of access over his own land. The KHC property owners cite Roberts v.Monroe, 261 Ala. 569, 575, 75 So.2d 492, 497 (1954), which succinctly summarizes this rule as follows:
 "`A way of necessity by implied grant when the land sold is separated from the highway by the grantor's land is discussed in our recent case of Hamby v. Stepleton, [221 Ala. 536] 130 So. 76 [(1930)], where the principle is referred to that, "if one has an outlet over his *Page 1054 
own land, although less convenient he cannot claim a right of way over the premises of another." 9 R.C.L. 769. And it is said in the case of Hill v. Wing,
supra, [193 Ala. 312, 69 So. 445 (1915)]: "If one can get to his property through his own land, he cannot claim a way of necessity through the land of another. . . . That the way sought is more convenient than another way already existing is no reason for obtaining it as a way of necessity."'"
Likewise, the KHC property owners rely on this statement fromEx parte Cater, 772 So.2d 1117, 1119 (Ala. 2000):
 "The law applicable to private-condemnation proceedings under the statute is well established. As this Court has stated:
 "`If one has a way through his own land, he cannot impose a "way of necessity" through his neighbor's land, unless his own way is not reasonably adequate or its cost is prohibitive. Mere inconvenience or mere cost, as the basis for using another's land to get access to one's own property, falls short of meeting this test.'
 "Oyler v. Gilliland, 382 So.2d 517, 519 (Ala. 1980) (citations omitted)."
As indicated by the opening sentence of the quoted excerpt,Cater did not involve an easement by necessity, or a way of necessity, of the type at issue in the present case but rather the condemnation of a private right-of-way pursuant to Ala. Code 1975, § 18-3-1, which provides:
 "The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way, not exceeding in width 30 feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto. . . ."
Arguably, this "law applicable to private-condemnation proceedings under the statute" is not equally applicable to the creation of an easement by necessity, given that Oyler v.Gilliland, 382 So.2d 517 (Ala. 1980), upon which Cater relied, in turn relied (among the "citations omitted" noted by Cater in its quotation from Oyler) upon Southern Ry. v. Hall,267 Ala. 143, 100 So.2d 722 (1957), another statutory private-condemnation case. As explained in Southern Ry.:
 "The obvious purpose of the statute is to provide a means whereby a landowner, enclosed on all sides by lands of others and unable to get to his land from a public road or highway, can get relief by condemning a right of way to it across intervening land. However, if such landowner already has a reasonably adequate way to and from his land, there is no field of operation for the statute."
267 Ala. at 146, 100 So.2d at 724. Nonetheless, the statement of the rule from Roberts, supra, was in relation to an easement by necessity or a way of necessity of the type here at issue, and it clearly stands for the proposition, and logically so, that a grantee is not entitled to an easement by necessity across retained lands of the grantor if the grantee otherwise can get to the highway across his own land, even though that way is less convenient than the way sought by the easement.
Before we consider further whether there existed a genuine issue of material fact under the evidence relating to the establishment of an easement by necessity in connection with the 1939 conveyance of the first portion of the Carswell estate to B.C. Rhyne by RAA, we note that the KHC property owners argue alternatively in their brief: *Page 1055 
 "Even though the Trial Court in its order did not state that he was granting the [Carswell estate owners] an easement by implication, even applying this standard would not warrant summary judgment. Specifically, to prove entitlement to an easement by implication, a landowner must show that his or her parcel of property had original unity of ownership with the land through which the easement is sought. Helms v. Tullis, 398 So.2d 253, 255 [(1981)]. Additionally, the use must be open, visible, continuous, and reasonably necessary to the estate granted. Id. `The implication is that the parties implied such an easement because the grantee, having seen the use the grantor made of the property, can reasonably expect a continuance of the former manner of use.' Helms, 398 So.2d at 255-56."
(KHC property owners' brief, pp. 19-20.)
The KHC property owners argue that the Carswell estate owners failed to show that the use of the access road through the KHC property was continuous, given the evidence supplied by the Kelly affidavit suggesting that the "use was sporadic and seasonal." InHelms v. Tullis, 398 So.2d 253 (1981), this Court distinguished between an easement by necessity and an easement by implication as follows:
 "The rationale for allowing an easement by necessity is that public policy demands that land not be rendered unusable. . . . The burden is on the one seeking to establish the easement to prove the easement is `reasonably necessary for the enjoyment' of the land. Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492 (1954). Easements by necessity almost always involve access roads across the servient tenement connecting the dominant tenement to a public road or highway. . . . Original unity of ownership of the dominant and servient tenements is always required for an easement by necessity. . . .
 ". . . [An easement created by implication] requires not only original unity of ownership, but also that the use be open, visible, continuous, and reasonably necessary to the estate granted."
398 So.2d at 255.
Because the trial judge explained clearly that he was recognizing the creation of an easement by necessity, describing its legally required characteristics, we need not consider further the argument that the evidence would not have satisfied the legally required characteristics of an easement by implication, including "continuous" use.
Citing specific pages of Cater, specifically "772 So.2d at 1121-22," the KHC property owners assert that the Carswell estate owners had the obligation to "show that any other alternative-access route would require unreasonable expense disproportionate to the value of the property," which, the KHC property owners assert, they failed to do; the KHC property owners point out that the trial court "never discussed this as a requirement." (KHC property owners' brief, pp. 17-18.) The portion of Cater on which the KHC property owners rely in this regard, however, was discussing requirements of the right of private condemnation under § 18-3-1. Specifically, the Cater
opinion first quoted from the statutory private-condemnation case of Southern Ry. v. Hall, supra, the following statement fromState ex rel. Carlson v. Superior Court, 107 Wash. 228, 232,181 P. 689, 691 (1919):
 "`"So it may be said that, notwithstanding a statute gives a landlocked owner the right to condemn a way of necessity over the lands of a stranger, it is not a favored statute, and the taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is *Page 1056 prohibitive, for it must be borne in mind that, after all, this is a condemnation proceeding. We are taking the property of one man and giving it to another."'"
772 So.2d at 1120-21 (emphasis supplied in Cater).
Following that statement, the Court in Cater continued:
 "Thus, under § 18-3-1, a landowner is not entitled to condemn a right-of-way across a neighbor's intervening land if the landowner has an existing, reasonably adequate means of access to his property, or if he could construct such access without prohibitive expense."
772 So.2d at 1121.
The KHC property owners have not shown that lack of adequate access is a part of the burden of proof that a landowner seeking to establish the creation of an easement by necessity over the retained lands of the grantor separating the conveyed parcel from a public road at the time the lands are conveyed, must satisfy.
Finally, the KHC property owners argue that although the affidavits of Rhyne and Holman stated that the Carswell estate was "landlocked," Kelly's affidavit stated that the Carswell estate owners were "only landlocked by their property which adjoined a public road, and that [the Carswell estate owners] could build a road from a public road without going through [the KHC property owners'] road." (KHC property owners' brief, p. 18.) We disagree with this construction of the Kelly affidavit. As noted, the pertinent text from the affidavit states:
 "In addition, the [Carswell estate] is not `landlocked.' The property is only `locked' by other property which is or was owned by either Mr. Rhyne or his siblings. Another roadway can be developed directly from the property to a public road without using the road through [the KHC property]."
The KHC property owners do not attempt to identify B.C. Rhyne's "siblings," and the record is devoid of any suggestion that he had any brothers or sisters. At any rate, the Kelly affidavit does not suggest that there ever existed an access road to the Carswell estate over any property owned by any sibling of B.C. Rhyne, but only that the Carswell estate was "locked" by that property as well as by the property retained by RAA and that "[a]nother roadway can be developed" to a public road without using the existing access road through the KHC property owners' land. Presumably, Kelly knew, or the KHC property owners could readily have ascertained from the records in the Lowndes County Probate Office, the location and ownership of this "other property," but no such information is offered. As it stands, Kelly's affidavit states only that Rhyne or his siblings, either owned at some time in the past, or now own, "other property" that presumably is adjacent to the Carswell estate and through which "[a]nother roadway can be developed" to reach a public road.
The critical point in time, however, for purposes of determining whether an easement by necessity was created, was the 1939 conveyance by RAA to Rhyne, and the affidavit leaves it entirely to speculation whether other property currently, or previously, owned by Rhyne or his siblings was owned by him or them at that particular point in time. More detrimental to the KHC property owners' argument in this regard, however, is the fact that the Kelly affidavit simply states, without selective application, that the "other property" was or is owned "by either Mr. Rhyne or his siblings." If, as an equally available possibility, the property was owned by Rhyne's siblings, he would have no right to claim or *Page 1057 
gain an access right-of-way across their property. Legally, they would simply be "third-parties and strangers" to his ownership of the Carswell estate, and, as noted in Hamby v. Stepleton,221 Ala. 536, 538, 130 So. 76, 77 (1930), immediately following that portion of its text quoted by the trial judge in his second order, "[n]o way of necessity can be presumed or acquired over the land of a stranger."
Thus, in the final analysis, the Kelly affidavit simply relies on conclusory allegations and speculation that a particular fact situation might have existed.
 "[W]e are . . . mindful that `[s]ummary judgment is not prevented by "conclusory allegations" or "speculation" that a fact issue exists. Bare argument or conjecture will not satisfy a [nonmovant's] burden to offer facts to defeat the motion.' Riggs v. Bell, 564 So.2d 882, 885 (Ala. 1990) (citations omitted). This Court has reiterated this principle frequently since Riggs, citing that case: McGarry v. Flournoy, 624 So.2d 1359, 1361 (Ala. 1993); Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 878
(Ala. 1994) (`[M]ere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer facts or to defeat the motion.'); Blackburn v. State Farm Auto. Ins. Co., 652 So.2d 1140, 1142 (Ala. 1994); Huff v. United Ins. Co. of America, 674 So.2d 21, 24 (Ala. 1995); and Reid v. Jefferson County, 672 So.2d 1285, 1290
(Ala. 1995) (`[the nonmovant's] statements are conclusory. Thus, those statements do not constitute substantial evidence and, therefore, do not warrant submitting [his] claim to the jury'). This Court has stated: `[A party opposing a summary-judgment motion] must present facts, not merely inferences based upon belief, that counter facts offered in support of the motion.' Davis v. Ford Motor Credit Co., 599 So.2d 1123, 1125 (Ala. 1992)."
Brown v. St. Vincent's Hosp., 899 So.2d 227, 238-39 (Ala. 2004).
Once the Carswell estate owners carried their initial burden of showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law, the burden then shifted to the KHC property owners to present substantial evidence creating a genuine issue of material fact. Nelson v.Estate of Frederick, 855 So.2d 1043, 1046 (Ala. 2003).
 "[T]his Court has stated that `"[e]vidence supporting nothing more than speculation, conjecture, or a guess does not rise to the level of substantial evidence."' McGinnis v. Jim Walter Homes, Inc., 800 So.2d 140, 145 (Ala. 2001) (quoting Brushwitz v. Ezell, 757 So.2d 423, 432 (Ala. 2000))."
State Farm Fire Cas. Co. v. Shady Grove Baptist Church,838 So.2d 1039, 1041 (Ala. 2002).
Accordingly, the Kelly affidavit, leaving it completely to speculation, conjecture, or guess whether it was Mr. Rhyne or his unidentified siblings who at some unidentified point in time owned other property that "locked" the Carswell estate, does not constitute substantial evidence sufficient to create a genuine issue of material fact, neutralizing the otherwise unrebutted evidence supplied by the Carswell estate owners that the Carswell estate was completely landlocked when B.C. Rhyne purchased the first portion of it from RAA in 1939, and that additional acreage brought by him from RAA in 1941 was similarly completely landlocked, except for the access road Rhyne was using across those lands retained by RAA that now constitute the KHC property. *Page 1058 
Accordingly, the summary judgment is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.