HOUSTON, Justice.
Ronald Alan Avery and his wife, Darlene Avery, individually and doing d/b/a Starmont Water System a/k/a Starmont Water Company (hereinafter collectively referred to as “the Averys”), sued the Marengo County *1349 Commission; Freddie Armstead, Leon Glass, Billy Miles, Charles Moore, and James Hop-son, individually and in their official capacities as members of the Marengo County Commission; the Sewer Board of the City of Demopolis; and Billy Traeger, Stewart Reynolds, Barney Zanders, Ludie Pearson, and Austin Caldwell, individually and in their official capacities as members of the Sewer Board of the City of Demopolis.[1] The complaint alleged that the defendants were extending the City of Demopolis’s water lines into the Starmont subdivision, which was exclusively serviced by the Averys’ privately owned water system; the Averys sought relocation expenses, claiming that they were “displaced persons” within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970; they sought damages under the theory of inverse condemnation; and they sought a declaration as to the constitutionality of Ala. Code 1975, §§ 37-4-60 through -65. The defendants filed summary judgment motions, which the trial court granted, holding that under Alabama law the Averys were not entitled to recover; that they were not displaced persons entitled to relief under the Uniform Relocation Assistance and Real Property Acquisition Policies Act; and that they were not entitled to compensation for inverse condemnation under Alabama or federal law, because they “did not have real property taken or displaced by the Defendants.” The Averys appeal from the summary judgment. We affirm.
The Averys own and operate a private water company known as Starmont Water System, which was the exclusive water source for approximately 43 customers who reside in the Starmont subdivision. The subdivision is located in Marengo County and is approximately three miles south of the corporate limits of Demopolis.
They acquired the water system in 1984 when they purchased the water wells, pipes, pipelines, tanks, meters, and related equipment for $15,000. Since that time, the Averys have maintained, repaired, and improved the system, at a cost of $15,000-$16,000. They have also read the meters and sent out and collected bills from their customers.
The privately owned water system operates under a “certificate of public convenience and necessity” issued by the Alabama Public Service Commission, which regulates the rates at which the Averys may sell their water. Three water lines of the privately owned water system are located on county rights-of-way; and the roads and streets where the mains are located are maintained by Marengo County.
In June 1990, the Marengo County Commission applied to the state for a “Community Development Block Grant” pursuant to the Housing and Community Development Act of 1974, seeking Federal financial assistance in extending the City of Demopolis’s water lines to certain unincorporated areas of the County, including Starmont subdivision. In its application, the Commission gave written assurance that it would comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended. Thereafter, Marengo County received $300,000 in grants to assist it with the costs of design and construction of the water line extension. The construction was approved by the director of the State Highway Department, and it complied with State and Federal requirements, regulations, and other guidelines.
In the fall of 1991, Freddy Armstead, a Marengo County commissioner, advised the Averys that the Demopolis Water Works would be extending its lines into Starmont subdivision. When Armstead asked the Averys how much it would cost the county to purchase the private water company, they told him $90,000. Armstead later informed the Averys that the county would not be purchasing it.
Subsequently, in January 1992, the public water lines for the Marengo County project *1350 were extended south along U.S. Highway 43. The lines were placed in either the State right-of-way or in the county right-of-way and were tapped into the same aquifer as the Starmont Water System. All easements were granted before the construction.
The Averys do not contest the right of the Demopolis Water Board and Marengo County to extend the city water lines into unincorporated areas of the county. In fact, they concede that Ala.Code 1975, § 11-50-5, expressly permits municipalities to extend water lines outside the corporate limits of the municipality. However, according to the Averys, “[t]he problem here ... is that [their] private water system will, for all practical effects, be destroyed as a going business ... [because] the Demopolis Water Works is not subject to taxation ..., nor is it subject to regulation by the Alabama Public Service Commission.” They maintain that the extension of municipal water lines into the area served by their privately owned water company under a certificate of convenience and necessity resulted in loss of business to that company and therefore constituted inverse condemnation, in violation of Art. I § 23 and Art. XII § 235 of the Alabama Constitution of 1901. They argue, therefore, that they are entitled to compensation.
In Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 143-45, 177 So. 332, 339 (1937), following the reasoning of the United States Supreme Court in Skaneateles Waterworks Co. v. Village of Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585 (1901), the Court stated:
“[T]he proper rule ... is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of ‘its’ works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public.
“It is not here contended by appellant that any of its property has been or will be taken by the defendant city in the construction and operation of its proposed plant, nor that there will be any physical disturbance of its property rights therein, but its sole contention in this respect is: That ‘because power subsidized by the United States is available to the proposed municipal system, and because the city is free from taxation and regulation to which plaintiff is subject, the city is able to offer lower rates to citizens of the city than plaintiff can offer consistent with a fair return on its property; and that as a proximate consequence the value of plaintiffs property in such city will be practically or entirely destroyed by the proposed construction of the electric distribution system.’
“It is conceded that the city could have granted the franchise to an individual, or to some corporation to construct an electric plant in the city of Guntersville, and to operate the same in competition with appellant without incurring any liability to the appellant for any diminution of the value of its plant, or in the returns therefrom by reason of the construction and operation of the competing plant, but that the city itself cannot embark upon this undertaking, in competition with the appellant. This for the sole reason, and upon the sole basis, that the city will be able to secure electric power from the United States, and, being free from taxation and regulation to which the appellant is subject, the city will be able to offer cheaper rates, and thereby will be able to take from appellant its customers.
“It may be that competition with the city may prove ruinous to appellant’s business in the city of Guntersville, but this is not sufficient to justify a holding that the city cannot proceed in its proposed undertaking, having full legislative authority to that end....
[[Image here]]
“As we see it, ... only a question of loss of returns and profits from its business, *1351 incident to competition on the part of the city, is presented. That the city has ample statutory authority to construct and operate a lighting plant, no one mil doubt for a moment. That the city purposes, in the construction of its plant, and in the prosecution of its business of supplying electricity to the inhabitants of the city, to take, injure or destroy the property of the appellant, giving to the terms their proper legal meaning, is not charged. The embarking upon a competitive business with appellant, without any physical disturbance of appellant’s property, or any' interference with the right the appellant has to the legal and proper use of the same, is not such an injury to, or destruction of, property as falls within the protection of section 235 of the Constitution.”
(Some emphasis original; other emphasis added.) See, also, City of Daphne v. Eastern Shore Wastewater Treatment Facility, Inc., 551 So.2d 989 (Ala.1989), where the Court, citing Alabama Power Co. v. City of Gun-tersville, supra, upheld the City of Daphne’s extension of sewer treatment services that had been undertaken to the detriment of the plaintiff, a private corporation.
In this case, the defendants have not acquired any of the Averys’ real property or property interests; they have hot physically taken the Averys’ property or their property rights; the groundwater at issue constantly recharges, so that the defendants’ use of the water will not deplete the Averys’ water supply; and the defendants’ use of the water supply will not interfere with the Averys’ right to use the water, with their established easement, or with their enjoyment of the beneficial use of the land.
For the foregoing reasons, the trial court properly entered the summary judgment for the defendants on the Averys’ claim that they were entitled to compensation for inverse condemnation.
The Averys also maintain that they are displaced persons within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq., because, they claim, the extension of municipal water lines into the area serviced by their privately owned water company has damaged their business — that the defendants’ extraction of water from the supplying aquifer constitutes an acquisition or taking of their real property rights or property interests and thus that they are entitled to relief under the Act.
The Act was enacted to establish “a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance.” 42 U.S.C. § 4621(b). It mandates that whenever the acquisition of real property for a program or project undertaken by a Federal agency will result in the displacement of any person, the head of the displacing agency shall reimburse any displaced person for: 1) actual reasonable expenses in moving himself, his family, his business, or other personal property; 2) actual direct losses of tangible personal property resulting from the move or discontinuation of business; 3) actual, reasonable expenses in searching for a replacement business; and 4) actual reasonable expenses necessary to reestablish a displaced small business at its new site. § 4622(a). A “displaced person” under the Act is a person who moves from real property, or moves his personal property from real property, as a result of the acquisition' of real property for a program or project undertaken by a Federal agency or with Federal financial assistance. § 4601(6)(A)(i)(I).
In this ease, no real property or property interest of the Averys has been acquired or taken, nor have the Averys been required to relocate. Rather, the land upon which the Averys’ well, pumping station, and other business equipment is located remains their property and in their possession to use and promote; the pipelines that provide service to their customers have not been altered or disturbed and need not be removed; and their right to the beneficial use of the groundwater beneath their property remains undisturbed and accessible.
Accordingly, the Averys are not “displaced persons” entitled to relief under the Act, and the trial court properly entered summary judgments for the defendants on this claim.
*1352 The Averys further argue that the exclusion of water companies from Ala.Code 1975, §§ 37-4-60 through -65, denies them equal protection under the laws — that those Code sections are discriminatory because, the Averys say, they differentiate between private electrical utility companies and private water systems.
“The basic tenet of the equal protection clause is that all persons similarly situated must be treated equally. It does not, however, require that a statute necessarily apply equally to all persons or require that' things different in fact be treated in law as though they were the same.”
McClendon v. Shelby County, 484 So.2d 459, 464 (Ala.Civ.App.1985), cert. denied, Ex parte McClendon, 484 So.2d 465 (Ala.1986), cert. denied, McClendon v. Shelby County, 479 U.S. 815, 107 S.Ct. 69, 93 L.Ed.2d 27 (1986). (Citations omitted.)
“‘The equal protection clause does not deprive government of its police powers to pass statutes for the protection of public health, safety, morals, and for the general welfare. In such matters, the legislative body has wide discretion as long as the acts have an equal and uniform application to all persons similarly situated. When the act does not apply equally and uniformly to all who are similarly situated or there is no reasonable basis for the classification, it is in violation of the Fourteenth Amendment to the Federal Constitution.’ ”
Ramer v. City of Hoover, 437 So.2d 455, 468 (Ala.1983) (quoting with approval the trial court’s order). Mere differences in the types of businesses conducted may also be sufficient to uphold legislation challenged on equal protection grounds, if the differences cause the businesses not to be similarly situated. See, e.g., Alamo Rentr-A-Car, Inc. v. Sarasota-Manatee Airport Authority, 825 F.2d 367 (11th Cir.1987), cert. denied, Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988).
Under the facts of this case, pretermitting the question of the Averys’ standing to challenge the constitutionality of §§ 37-4-60 through -65, we must conclude that the Averys failed to meet their burden of presenting substantial evidence to show a denial of equal protection — they failed to present sufficient evidence that they were similarly situated with private electric utility companies or that the exclusion of water utility companies from §§ 37-L-60 through -65, was arbitrary or that there was no reasonable basis for the classification.
For the foregoing reasons, the summary judgments for the defendants are affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in the result.

. R & W Construction Company, Inc., which received the construction contract to build the water line extension that is the center of this dispute, was also a defendant in this case. However, all claims against R & W were dismissed with prejudice, pursuant to a stipulation; therefore, R & W is not a party to this appeal.