STUART, Justice.
The Housing Authority of the Birmingham District (“HABD”) appeals the judg *1171 ment entered by the Jefferson Circuit Court awarding Logan Properties, Inc., $350,000 on its inverse-condemnation claim against HABD, as well as an additional $100,000 for litigation expenses, . and awarding the intervening plaintiff Alameri-ca Bank $10,000 for litigation expenses. We reverse and remand.
I.
Logan Properties is a real-estate and property-management company that purchases, renovates, rents, and maintains single-family and multi-family residences in the Birmingham area. In January 2002, Logan Properties purchased Patio Court, a 30-unit apartment complex in the Ensley neighborhood in Birmingham for approximately $101,000. Logan Properties began renovating the vacant units in the complex with the plan of transferring current tenants into the newly renovated units until the entire complex was eventually renovated and leased. Logan Properties financed the purchase and rehabilitation of Patio Court by obtaining a construction loan from Alamerica Bank.[1] In February 2003, Logan Properties obtained an adjacent parcel of property including a triplex unit with the same goal of renovating and leasing the units.
Sometime in 2004, Logan Properties learned that HABD had obtained a federal grant to redevelop Tuxedo Court, a multi-block public-housing complex located across 22nd Street from Patio Court. That project, referred to by the parties as the Hope VI project, entailed the demolition of the existing Tuxedo Court housing complex and the construction of new housing in its place. At trial, Logan Properties’ officers testified that, after the plans for the Hope VI project were made public, tenants started leaving Patio Court, telling Logan Properties that HABD was going to condemn Patio Court as part of the Hope VI project. As residents in Tuxedo Court left as well, the general area deteriorated, and the vacant Patio Court apartments became the subject of theft and vandalism. Although Logan Properties had completely renovated 18 of the units, it eventually stopped renovation work, and, during the 2011 trial, it was conceded that the entire property had become unlivable.[2]
In September 2005, the Boulevard Group, which was hired by HABD to be the project manager for the Hope VI project, offered to buy Patio Court, but not the triplex, from Logan Properties for $200,000. Logan Properties rejected the offer but, in November 2005, made a counteroffer to sell Patio Court and the triplex for $415,000. That offer was not accepted.
It is not clear exactly what transpired over the next 18 months, but it appears that there were at least some ongoing negotiations between Logan Properties and HABD while Patio Court continued to deteriorate. On May 15, 2007, Logan Properties received an appraisal report it had commissioned, placing the fair market value of Patio Court and the adjacent triplex on September 1, 2005 — “the date the owners state the property was in livable condition” — at $425,000. On June 18, 2007, HABD sent Logan Properties a letter formally offering to buy Patio Court and the triplex for $104,200, the amount those properties had been appraised for in an independent appraisal commissioned by HABD. The letter also advised Logan Properties that if it did not accept the offer, “it will be necessary for HABD to file suit to acquire the property by con *1172 demnation under its power of eminent domain.” See § 24-1-28, Ala.Code 1975 (providing that a municipal housing authority may “acquire by eminent domain any property, real or personal, which it may deem necessary to carry out the purposes * of [the Housing Authorities Law, § 24-1-20 et seq., Ala.Code 1975]”). Logan Properties did not accept the offer and, in accordance with § 18-1A-270 et seq., Ala.Code 1975, HABD subsequently initiated, on September 26, 2007, condemnation proceedings in the Jefferson Probate Court. As required by § 18-1A-75(a), Ala.Code 1975, HABD simultaneously filed a lis pendens notice on the properties.
The probate court thereafter granted HABD’s application for condemnation and appointed three disinterested commissioners to determine the compensation due Logan Properties for the condemnation of its property. On February 25, 2008, those commissioners filed a report with the probate court setting the amount of compensation at $104,950. However, the probate court failed to enter an order adopting the commissioners’ report within the seven-day period required by § 18-1A-282, Ala. Code 1975, and Logan Properties thereafter moved for a dismissal of the condemnation action on the basis of the probate court’s failure to comply with § 18-1A-282. On July 2, 2008, the probate court granted that motion and dismissed the action.
In May 2009, HABD renewed its effort to acquire the property belonging to Logan Properties, ordering a new appraisal, which valued the property at $108,700. On May 22, 2009, HABD made a formal offer to buy the property from Logan Properties for that amount, again advising that it would exercise its powers of eminent domain if the offer was not accepted. On November 20, 2009, HABD sent Logan Properties a letter reiterating its offer and its intent to initiate condemnation proceedings if Logan Properties did not agree to sell the property.
On January 21, 2010, Logan Properties initiated this action in the Jefferson Circuit Court, asserting an inverse-condemnation claim against HABD and arguing that HABD’s pursuit of its property over the previous several years constituted a de facto taking of the property. See, e.g., McClendon v. City of Boaz, 395 So.2d 21, 24 (Ala.1981) (“Inverse condemnation is the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a governmental agency or entity which has the right or power of condemnation.”).
Alamerica Bank thereafter moved to intervene pursuant to Rule 24(a), Ala. R. Civ. P., to protect its interest as mortgagee of the Patio Court property, and, on April 8, 2011, the trial court granted that motion. A three-day jury trial was held beginning October 4, 2011. HABD moved for a judgment as a matter of law at the close of the plaintiffs’ case and renewed that motion at the close of all evidence; the trial court denied both motions. Ultimately, the jury returned a verdict in favor of Logan Properties and against HABD in the amount of $350,000.
Logan Properties and Alamerica Bank subsequently moved the trial court to award them litigation expenses, including attorney fees. See § 18-lA-32(b), Ala. Code 1975 (“The judgment and any settlement in an inverse condemnation action awarding or allowing compensation to the plaintiff for the taking or damaging of property by a condemnor shall include the plaintiffs litigation expenses.”). Following a hearing, the trial court granted their motions. On December 16, 2011, the trial court entered its final judgment, awarding *1173 Logan Properties $350,000 on the jury verdict and an additional $100,000 for litigation expenses and awarding Alamerica Bank $10,000 for litigation expenses. HABD’s subsequent postjudgment motion for a judgment as a matter of law or, in the alternative, for a new trial was denied by the trial court on March 16, 2012, and, on April 20, 2012, HABD filed its notice of appeal to this Court.
II.
In Alabama Department of Transportation v. Land Energy, Ltd., 886 So.2d 787 (Ala.2004), this Court considered an appellant’s argument that the trial court had erred by failing to grant the appellant’s motion for a judgment as a matter of law on the appellee’s inverse-condemnation claim. We described the applicable standard of review as follows:
‘“When reviewing a ruling on a motion for a [judgment as a matter of law], this Court uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate issue is whether the non-movant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992).... A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a [judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. If the question is one of law, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala. 1992).’ ”
886 So.2d at 791-92 (quoting Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d 1237, 1240 (Ala.1999)).
III.
Section 235 of the of Alabama Constitution provides that entities invested with the privilege of taking property for public use — including municipal authorities such as HABD — “shall make just compensation ... for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction.” Ala. Const.1901, Art. XII, § 235. Section 235 does not expressly discuss inverse condemnation; however, statutes and this Court’s cas'elaw have long recognized that, if an entity holding eminent-domain powers fails to make compensation before taking, injuring, or destroying private property, the aggrieved property owner is entitled to assert an inverse-condemnation claim against that municipal corporation. See Jefferson Cnty. v. Southern Natural Gas Co., 621 So.2d 1282, 1287 (Ala.1993) (“Sonat ”) (“ ‘Inverse condemnation’ refers to a legal action against a governmental authority to recover the value of property that has been taken by that governmental authority without exercising its power of eminent domain — it is a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when the taking authority has not initiated condemnation proceedings.”), and § 18-1A-32, Ala.Code 1975 (“A condemnor shall not intentionally make it necessary for an owner of property to commence an action, including an action in inverse condemnation, to prove the fact of the taking of his property.”). *1174 Applying § 235, a plaintiff asserting an inverse-condemnation claim is required to put forth substantial evidence of the following elements: (1) that the defendant is an entity “invested with the privilege of taking property for public use”; (2) that the plaintiffs property was “taken, injured, or destroyed”; and (3) that that taking, injury, or destruction was caused “by the construction or enlargement of [the defendant’s] works, highways, or improvements.” See, e.g., Mahan v. Holifield, 361 So.2d 1076, 1079 (Ala.1978) (“[Section 235] has been interpreted to support a cause of action by a private landowner whose property is taken or damaged by a municipality as a consequence of its acts of construction or enlargement.”). In this case, there is no dispute that HABD holds eminent-domain powers pursuant to § 24-1-28, Ala.Code 1975. On appeal, however, HABD argues that there was no taking, injury, or destruction of Logan Properties’ property and that, even if the “injuries” alleged by Logan Properties were cognizable, they were not caused by the construction or enlargement of HABD’s works or improvements.
It is undisputed in this case that HABD never seized, occupied, or exercised control over the Patio Court property or the adjacent triplex owned by Logan Properties. It is likewise undisputed that HABD never took any action that physically injured or had any direct physical impact upon those properties. Finally, there is no allegation that HABD ever impeded access to any property owned by Logan Properties. In light of these undisputed facts, HABD argues that it was entitled to a judgment as a matter of law because, it says, there was no evidence of any taking of or injury to property owned by Logan Properties. See, e.g., Sonat, 621 So.2d at 1286-87 (“Section 235 specifically requires municipalities and other corporations ‘invested with the privilege of taking property for public use’ to make ‘just compensation’ for ‘property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements,’ where there is evidence of some direct physical injury to the property.” (emphasis added)); Reid v. Jefferson Cnty., 672 So.2d 1285 (Ala.1995) (affirming a summary judgment entered in favor of municipalities on plaintiffs inverse-condemnation claim alleging that he suffered an injury when a pedestrian bridge was constructed adjacent to his business, where evidence indicated that no work was performed on plaintiffs property, that the surface of plaintiffs property was not disturbed, and that the plaintiffs property was not subjected to any direct or indirect physical disturbance); and Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 145, 177 So. 332, 340 (1937) (“The embarking upon a competitive business with appellant, without any physical disturbance of appellant’s property, or any interference with the right the appellant has to the legal and proper use of the same, is not such an injury to, or destruction of, property as falls within the protection of section 235 of the Constitution.” (emphasis added)).
Logan Properties does not dispute that there was no trespass onto its property. Rather, it argues that HABD engaged in a series of actions that resulted in the devaluation of its property. In its complaint, it articulated the alleged taking as follows: “The fact that the HABD has indicated, attempted and continues to pursue the condemnation of [Patio Court and the adjacent triplex] from Logan Properties constitutes a taking.” Essentially, Logan Properties argues that the possibility of condemnation became public in 2004, resulting in a steady exodus of tenants. As tenants left, income was reduced, making *1175 it harder to finance the ongoing renovations of Patio Court and the triplex. Eventually, Alamerica Bank stopped loaning Logan Properties money for the renovations because of the possibility of condemnation, and the lis pendens notice placed on the property in September 2007, Logan Properties argues, not only made it impossible to borrow money to maintain or to renovate the property but also rendered the property unmarketable. Finally, Logan Properties argues, even after the first condemnation action was dismissed in July 2008, HABD did not remove the lis pen-dens notice or file a new condemnation action, and Logan Properties was finally forced to initiate this action in January 2010 in order to get the property out of the limbo it had been in for approximately six years. In sum, Logan Properties argues, HABD’s actions over this lengthy period cannot be considered simply part of the normal condemnation process and any number of those actions have injured Logan Properties sufficiently to constitute an injury or taking that is compensable pursuant to § 235.
Logan Properties has put forth substantial evidence indicating that the Hope VI project as a whole and HABD’s efforts to acquire Patio Court and the adjacent triplex had a negative effect, either direct or indirect, upon Patio Court and the adjacent triplex. However, we cannot agree that any decrease in value of those properties related to the Hope VI project constituted a taking or an injury that is compen-sable pursuant to § 235. As is evident from our caselaw, § 235 is most generally implicated either when property is physically taken by an authorized entity, see, e.g., Florence v. Williams, 439 So.2d 83, 88 (Ala.1983) (in which a municipality condemned private property for the construction of an off-street parking facility), or when property is physically injured, disturbed, or damaged in association with a public-works project, see, e.g., Warwick v. Mobile Cnty., 17 Ala.App. 206, 84 So. 396 (1919) (holding county hable where its employees entered onto plaintiffs property to remove soil for use in repair of adjacent roadway). Additionally, we have noted that § 235 is applicable in cases where an authorized entity engaged in “the construction or enlargement of its works, highways, or improvements” interferes with a nearby property owner’s right of access to his or her property. See Davis v. State, 346 So.2d 936, 939 (Ala.1977) (“ ‘ “The overwhelming weight of authority is that the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken or materially interfered with without just compensation. Access to the highway is one of these private rights and is a property right, and the interference with the right of access of an abutting owner is an element of damage.” ’ ” (quoting St. Clair Cnty. v. Bukacek, 272 Ala. 323, 328, 131 So.2d 683, 687 (1961), quoting in turn Blount Cnty. v. McPherson, 268 Ala. 133, 135, 105 So.2d 117, 119 (1958))).
Indeed, with the exception of McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153 (1909), the cases Logan Properties cites in support of the trial court’s judgment uniformly fall within one of these two categories. Yet it is undisputed in this case that there has been no physical disturbance to or intrusion upon Logan Properties’ property and no interference with its access to the property. Logan Properties accordingly emphasizes this Court’s holding in McEachin and argues that it controls, while HABD argues that McEachin was wrongly decided and that this Court has since retreated from its holding. A review of that case is accordingly appropriate.
*1176 In McEachin, a property owner sued a municipality after it had cut down shade trees located in the public right-of-way in front of her house, arguing that her house was made less comfortable and valuable as a result and that she was accordingly entitled to compensation under § 235. The trial court held that she had no claim; however, this Court reversed that judgment, holding that “if her property was injured by the destruction of the trees, by the defendant, in and about the enlargement or improvement of the street, she is entitled to just compensation, under the very letter of the Constitution.” 164 Ala. at 265, 51 So. at 153. Thus, the McEachin Court placed no import on the fact that there was no physical invasion or damage to the plaintiffs property or impairment to access, instead effectively holding that the plaintiff was entitled to compensation merely because her property suffered a loss in value in association with improvements made by a municipality to adjacent property. Logan Properties argues that the circumstances in this case are analogous and that it is entitled to compensation for the same reasons.
HABD, however, argues that McEachin is an outlier from which this Court has retreated, as evidenced by cases like City of Guntersville, in which we indicated that in order to recover for a taking pursuant to § 235 there must be either some physical disturbance to property or interference with a property owner’s right to use that property. 235 Ala. at 145, 177 So. at 340 (“The embarking upon a competitive business with appellant, without any physical disturbance of appellant’s property, or any interference with the right the appellant has to the legal and proper use of the same, is not such an injury to, or destruction of, property as falls within the protection of section 235 of the Constitution.”). Moreover, HABD argues that this Court, in Alabama Power Co. v. Christian, 216 Ala. 160, 162, 112 So. 763, 764 (1927), suggested that it was willing to revisit the holding of McEachin, but ultimately declined to do so because the appellant had not made that specific argument. (“[A]p-pellant, as we understand the argument, has not seen fit, on this appeal, to draw into question the authority of the prevailing opinionf ] in McEachin....”).
The ongoing validity of McEachin has, however, been called into question in this case, and we agree with HABD that, to the extent McEachin holds that a compensa-ble injury or taking can occur in the absence of any physical intrusion, injury, or destruction, including an injury to access, it was wrongly decided. Section 235 provides that an entity authorized to exercise the power of eminent domain “shall make just compensation ... for the property taken, injured, or destroyed by the construction or enlargement of [that entity’s] works, highways, or improvements.... ” The requirement that the taking or injury result from the “construction or enlargement of ... works, highways, or improvements” — projects that themselves have a tangible physical effect on property — suggests that any injury or taking must also be of a physical nature. Logan Properties’ assertion that it has suffered a taking or injury merely because its property was identified for acquisition and/or condemnation by HABD and because that fact made it more difficult to renovate, lease, or otherwise use the property, thus decreasing its market value, therefore fails in the absence of any evidence of a physical injury to that property.[3]
*1177 In sum, we reiterate the following articulation of the rule made by this Court in City of Guntersville:
“We think the proper rule, deducible from the foregoing authorities, is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of ‘its’ works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public.”
235 Ala. at 143-44, 177 So. at 339 (emphasis added).[4] It is undisputed that HABD caused no “direct physical disturbance” to property owned by Logan Properties; accordingly, the trial court erred by failing to grant HABD’s motions for a judgment as a matter of law.[5]
IV.
Logan Properties initiated an inverse-condemnation action against HABD, alleging that HABD had taken or injured property owned by Logan Properties. Following a trial, a jury returned a verdict in favor of Logan Properties, and the trial court entered a judgment on that verdict, awarding Logan Properties $350,000 in *1178 damages and $100,000 for litigation expenses. Alamerica Bank, which had intervened to protect its interest as the mortgagee of the property, was also awarded $10,000 for litigation expenses. However, because no evidence was presented at trial indicating that HABD was responsible for a direct physical injury upon Logan Properties’ property, that judgment is now reversed and the cause remanded for the trial court to enter a judgment as a matter of law in favor of HABD.
REVERSED AND REMANDED.
MALONE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. At the 2011 trial, the parties stipulated that at that time at least $325,876 remained owing on that loan.

. It appears Patio Court still had some tenants as late as 2007.

. This holding is consistent with the United States Supreme Court's rulings in cases involving claims alleging that the threat of condemnation and/or precondemnation procedures constitute a taking. See, e.g. Agins v. City of Tiburon, 447 U.S. 255, 263 n. 9, 100 *1177 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (overruled on other grounds by Lingle v. Chevron, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)) ("Appellants also claim that the city's precondemnation activities constitute a tak-ing_ The [California] Supreme Court correctly rejected the contention that the municipality’s good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellants’ enjoyment of their property as to constitute a taking- Even if the appellants’ ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are ‘incidents of ownership. They cannot be considered as a “taking” in the constitutional sense.’ Danforth v. United States, 308 U.S. 271, 285 (1939).”); Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 336, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) ("A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmak-ing.”); and First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., 482 U.S. 304, 320, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) ("[D]epreciation in value of the property by reason of preliminary activity is not chargeable to the government.”).

. We disagree, however, with the conclusion of the City of Guntersville Court that the removal of trees in McEachin constituted "a direct physical injury” to the plaintiff's property. 235 Ala. at 141, 177 So. at 336-37.

. Logan Properties also argues to this Court that HABD's motions for a judgment as a matter of law should not have been granted because it is always for the jury to decide whether there has been an injury or taking for purposes of § 235. See Sonat, 621 So.2d at 1287 ("This case involves inverse condemnation; therefore, the trial court did not err in allowing the jury to determine whether there had been a § 235 ‘taking’ or ‘injury.’ ”). However, a jury issue arises only when a genuine issue of material fact has been raised. See also Reid, 672 So.2d at 1290, and Avery v. Marengo Cnty. Comm’n, 646 So.2d 1347, 1351 (Ala. 1994) (affirming summary judgments entered by the trial court in favor of defendant government entities on plaintiffs’ inverse-condemnation claims). In this case, the facts are undisputed — there has been no physical injury and there is accordingly no issue regarding what caused that injury. Thus, a judgment as a matter of law is appropriate.