[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10011

_____

D.C. Docket No. 1:09-cv-01219-VEH


WOODS KNOLL, LLC,

Plaintiff – Appellant,

versus

THE CITY OF LINCOLN, ALABAMA,

Defendant - Appellee,

GOODWYN, MILLS & CAWOOD, INC., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 3, 2013)

Before CARNES, Chief Judge, DUBINA, Circuit Judge, and ROSENTHAL,[*] District Judge.

PER CURIAM:

Plaintiff/Appellant, Woods Knoll, LLC ("Woods"), appeals the district court's judgment, entered following a bench trial, in favor of the City of Lincoln ("City") on Woods' claim that the City violated the Clean Water Act ("CWA"). Woods also filed a motion to amend judgment and a motion for new trial pursuant to Federal Rule Civil Procedure 59, which the district court denied. Woods then perfected this appeal.

I.

Woods owns an approximately 230 acre tract of land located within the city limits of Lincoln, Alabama. The City owns an approximately 160 acre tract of land also located within the city limits. The Woods property, or Farm, is irregular in shape, and the northern boundary of both the Woods property and the City property front on McCaig Road. The Farm contains three ponds located in the frontage area along McCaig Road that historically have provided a water supply for cattle. The southern portion of the Farm is located on a ridge line that is higher in elevation than the remainder of the Farm property, and this portion of the Farm drains to the north. There is a ditch along a portion of the northern boundary of the

---

[*]Honorable Lee Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

Farm that continues along a portion of the northern boundary of the City property. The City does not maintain this ditch ("the McCaig ditch"). The two share a common boundary line along the eastern boundary of the Farm and the western boundary of the City property.

The lower acreage of the Farm, which has frontage along McCaig Road, has historically been a wet area containing standing water. This low-lying area essentially acts as a bowl, receiving stormwater from multiple sources and directions, including water backing up from Lake Logan Martin when the lake is at or above high pool. This low-lying area has historically been susceptible to flooding, including flooding from the McCaig ditch. The evidence at trial established multiple causes for the historical flooding of this low-lying area: (1) beaver activity that prevents or retards natural drainage from the Farm; (2) the higher elevation of McCaig Road than the Farm along its McCaig Road frontage; (3) water backing up from Lake Logan Martin (known as "backwater effect" which occurs when the flow of water is obstructed and causes the direction of the flow to reverse in channels and streams); (4) groundwater contribution from nearby springs; (5) poorly draining soils on the Farm; and (6) lack of maintenance of the northern portion of the Farm since its purchase by Woods. There was also testimony that the Farm was historically subject to a flood easement held by the

Alabama Power Company, which meant that the Power Company had the right to flood the property by raising the lake levels.

The City property has three distinct drainage areas.  The eastern portion of the City property drains north towards McCaig Road and then to the east, away from the Farm.  This drainage has no impact on the Farm.  The northwestern portion of the City property drains north to the McCaig ditch, and then west onto the Farm.  The southwestern portion of the City property drains in a diffuse manner west onto the Farm through a drainage area that is approximately 400 to 600 feet wide.

## II.

The issues presented on appeal are (1) Whether the district court erred in finding that Woods failed to establish a violation of the CWA; (2) Whether the district court erred in finding that Woods failed to establish a claim for inverse condemnation; and (3) Whether the district court erred in finding that Woods failed to establish its state law claims under the Alabama Water Pollution Control Act ("AWPCA").

"On appeal of a district court order from a bench trial, we review the court's conclusions of law *de novo* and its findings of fact for clear error."  *HGI Assocs., Inc. v. Wetmore Printing Co.,* 427 F.3d 867, 873 (11th Cir. 2005).  *See also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must

not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."). "Clear error is a highly deferential standard of review." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 1511 (1985)).

### III.

Congress enacted the CWA in 1972 to restore and maintain the "chemical, physical, and biological integrity of [the] Nation's waters." 33 U.S.C. § 1251(a). In accordance with this purpose, section 301(a) of the CWA makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the Act. *See* 33 U.S.C. § 1311(a).

"To establish a CWA violation, the plaintiff[] must prove that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a NPDES permit." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004). The present case concerns a "point

source," which is "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

The district court specifically found that Woods failed to show a discharge from a discernible "point source" because Woods did not have sufficient evidence to establish that the clearing and grubbing[1] activities performed by the City in June 2007 were in any way connected to the alleged harm suffered by the Farm over 14 months later in August 2008.  Rather, the district court found that the flooding on the Farm was the result of longstanding conditions on the Farm property, including beaver activity, the low elevation of the Farm property, activity on and around Lake Logan Martin, groundwater contribution from nearby springs, poorly draining soils, and lack of maintenance by Woods.

## IV.

After reviewing the record, reading the parties briefs and having the benefit of oral argument, we conclude that the district court committed no reversible error. Specifically, we agree with the district court's finding that Woods failed to establish a viable CWA claim because there was no evidence that the City ever discharged any stormwater or sediment from a "point source."  As the evidence

---

[1] "Grubbing" is a word meaning to clear land by means of root and stump removal.

6

shows, the City's clearing and grubbing operations did not alter the land in a manner that caused stormwater to be collected or channeled so as to be discharged from a "point source." *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 508 (9th Cir. 2013) (explaining that the critical inquiry is "whether [the stormwater] is allowed to run off naturally (and is thus a nonpoint source) or is collected, channeled, and discharged through a system of ditches, culverts, channels, and similar conveyances (and is thus a point source discharge)" (internal quotation marks omitted)).  We also conclude that Woods failed to establish by competent evidence that the clearing and grubbing activities performed by the City were in any way connected to the alleged harm suffered by Woods over fourteen months later.  Thus, Woods failed to establish a causal connection between the City's actions and the alleged injury.  *See Texas Indep. Producers and Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 974 (7th Cir. 2005) (noting that in CWA action, complaining party "must show that the discharge caused the complained-of legally cognizable aesthetic or recreational injury").

The City asserts, alternatively, that Woods's CWA claim fails because Woods alleged only past violations, and a private citizen may not recover for only wholly past violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 59, 108 S. Ct. 376, 382 (1987). *See also* 33 U.S.C. § 1365(a)(1) (authorizing private citizen suits for injunctive relief and/or the imposition of civil

penalties in federal district court against any person alleged to be in violation of an effluent standard or limitation, such as a NPDES permit).  This contention is moot in light of our holding that the district court did not err in finding that Woods did not establish a point source or causation to establish its CWA claim.

Woods also asserted a claim under the AWPCA.  Although the district court found that Woods failed to establish a state law claim under the AWPCA, it did not address the City's contention that there is no private right of action under the AWPCA.  The City is correct.  While the CWA contains an explicit provision allowing citizen suits to enforce the Act, *see* 33 U.S.C. § 1365, the text of the AWPCA does not contain a similar provision explicitly authorizing private suits. *See* Ala. Code § 22-22-9(m).  Moreover, pursuant to Alabama law, "[o]ne claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001).  We conclude that the fact that the AWPCA does not mention private citizens in its provision on enforcement and civil penalties is strong evidence that the Alabama Legislature did not intend to create a private cause of action.  *See Liberty Nat. Life Ins. Co. v. Univ. of Alabama Health Servs. Found., P.C.*, 881 So. 2d 1013, 1026 (Ala. 2003) (finding no private right of action when "[t]he Legislature expressly reserved to the attorney general a cause of action for such violations, and [the plaintiff] has presented no evidence to

support the idea that § 22-21-7 creates or implies a private cause of action);

*McDonald,* 812 So. 2d at 311–12 (finding no private right of action when "[t]he Insurance Code explicitly provides in § 27-11-4 that the insurance commissioner has the authority to bring an action against any insurer he believes is violating the Insurance Code"). Thus, the district court properly rejected Woods's state law claim pursuant to the AWPCA.

We also agree with the district court's finding that Woods failed to establish a claim for inverse condemnation. As we held earlier, Woods failed to show that the City's actions caused the alleged damage to its property, and causation is an essential element of an inverse condemnation claim under Alabama law. *See Housing Auth. of Birmingham Dist. v. Logan Properties, Inc.*, ___ So. 3d ___ (No. 1111015) (Ala. Dec. 7, 2012) (setting out the elements of an inverse condemnation claim under § 235 of the Alabama Constitution); *Mahan v. Holifield,* 361 So. 2d 1076, 1079 (Ala. 1978) (noting that § 235 of the Alabama Constitution "has been interpreted to support a cause of action by a private landowner whose property is taken or damaged by a municipality *as a consequence* of its acts of construction or enlargement") (emphasis added).

In conclusion, because the record affirmatively establishes that Woods failed to prove that the City violated the CWA and the AWPCA, and it failed to establish

an inverse condemnation claim, we affirm the district court's judgment entered in favor of the City.

AFFIRMED.